Tagged Opinion



**ORDERED in the Southern District of Florida on September 25, 2009.**

John K. Olson, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

In re:

Case No. 09-21158-BKC-JKO

**HAGOP JACK KALFAYAN
NONA KALFAYAN**,                                    Chapter 13

Debtors.
_____/

**MEMORANDUM OPINION & ORDER
ON DEBTORS' MOTION AUTHORIZE
STUDENT LOAN PAYMENTS [DE 16]**

This matter came before me on July 8, 2009 upon Hagop Jack and Nona Kalfayan's Motion

to Authorize Student Loan Payments During Course of Chapter 13 Case [DE 16].  The Debtors filed

their Memorandum of Law in support of the motion on July 14, 2009 [DE 32].

**I. Factual and Procedural Background**

Joint Debtors Hagop Kalfayan and Nona Kalfayan filed their Chapter 13 Voluntary Petition

on June 04, 2009 [DE 1].  Nona Kalfayan is a licensed optometrist in Florida and is the family's

primary wage earner. *See* [DE 1, Schedule I].  Prior to filing the Petition, Nona Kalfayan borrowed

educational funds from MGSLP, and Creditor ECMC filed Notices of Assignment from MGSLP along with Proofs of Claim on July 15, 2009 for $110,340.70 [DE 33] and $46,699.64 [DE 34], totaling $157,040.34.

Nona Kalfayan claimed that she was current on her student loan payments on the Petition filing date, and that approximately 30 years remain on her repayment obligations of $382.24 per month [DE 32]. The Kalfayans' schedules identify $252,496.30 in unsecured nonpriority claims [DE 1, Schedule F], and Nona's student loan obligations therefore comprise 62.2% of the total unsecured nonpriority claims. The Kalfayans' First Amended Chapter 13 Plan [DE 49] calls for $673.51 per month to be paid to unsecured creditors in the first 49 months, rising to $901.93 for months 50 - 60. The Motion and Memorandum of Law ask me to allow Nona Kalfayan to continue making her student loan payments directly to the lender or via the Chapter 13 Trustee. For reasons detailed below, Nona must stay current on her student loan payments.

Under applicable Florida law, Nona's optometrist license (and therefore her source of income) may be jeopardized if she fails to timely make her student loan payments. The Kalfayans assert that public policy favors paying Nona's nondischargeable student loans, the amount of which exceeds the claims of other nonpriority unsecured creditors, and they argue that it would therefore be fair to discriminate in favor of the student loan lender under § 1322(b)(1) of the Bankruptcy Code[1]. Additionally, the Kalfayans contend that § 1322(b)(5) allows maintenance of payments during the pendency of a Chapter 13 case on long-term unsecured claims.

---

[1] 11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code" or the "Code").

## II. Discussion

Section 1322(b) of the Bankruptcy Code provides that a plan may:

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but **may not discriminate unfairly** against any class so designated; **however, such plan may treat claims** for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor **differently than other unsecured claims**;

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; . . .

11 U.S.C. § 1322 (emphasis added).  The Debtor has the burden of showing that the proposed classification does not discriminate unfairly under § 1322(b)(1). *Groves v. LaBarge (In re Groves)*, 39 F.3d 212, 214 (8th Cir. 1994); *In re Gonzalez,* 206 B.R. 239, 242 (Bankr. S.D. Fla. 1997).  Since the Bankruptcy Code is silent as to the meaning of "unfair," courts have used various tests when determining the fairness of discrimination.  The Eighth Circuit developed a four-pronged test in which a court must determine: (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination. *In re Leser*, 939 F.2d 669 (8th Cir. 1991).  However, this test has been criticized. *See, e.g., In re Colley*, 260 B.R. 532, 539 (Bankr. M.D. Fla. 2000).

Some courts have found that § 1322(b)(5) explicitly authorizes payments on long-term student loan debt during the life of a Chapter 13 plan, making such discrimination fair. *See In re Cox*, 186 B.R. 744, 746 (Bankr. N.D. Fla. 1995), *In re Chandler*, 210 B.R. 898, 900 (Bankr. D.N.H. 1997). But other courts have held that § 1322(b)(5) prohibits discrimination in favor of student loan creditors unless the proposal passes the "unfair discrimination" scrutiny of § 1322(b)(1). *See, e.g., In re Pora*, 353 B.R. 247, 252 (Bankr. N.D. Cal. 2006). Given the lack of uniformity in the approaches taken, many courts have held that determinations of fairness under § 1322(b)(1) should be made on a case-by-case basis. *See, e.g., In re Etheridge*, 297 B.R. 810, 816 (Bankr. M.D. Ala. 2003); *In re Colfer*, 159 B.R. 602, 611 (Bankr. D. Me. 1993).

Congress amended the Bankruptcy Code in 1990 to make the § 523(a)(8) student loan nondischargeability provision applicable to Chapter 13 cases. *See* 11 U.S.C. 523(a)(8); *Gonzalez,* 206 B.R. at 240. This caused many debtors to argue that this new nondischargeable status made discrimination in favor of student loan creditors fair under § 1322. Most courts have concluded that discrimination based solely on nondischargeability is unfair. *See, e.g., Groves*, 39 F.3d at 214; *Gonzalez,* 206 B.R. at 242; *Colfer*, 159 B.R. at 611.

However, courts have also held that if the discrimination in question benefits the very creditors who are being discriminated against, it can be considered fair under § 1322(b)(1). *See McCollough*, 162 B.R. at 517-18 ("to survive scrutiny under the statutory "discriminate unfairly" test, the debtor must place something material onto the scales to show a correlative benefit to the other unsecured creditors"); *Colley*, 260 B.R.at 539; *Etheridge*, 297 B.R. at 816. While *In re Etheridge* did not involve student loans, it is similar to the instant case because the *Etheridge* debtor faced possible conviction and incarceration if she did not make payments on her pretrial diversion

contract. *Etheridge*, 297 B.R. at 816.  Such an outcome would have dramatically reduced the chances that any of the debtor's creditors would be paid, and the court therefore found that the discrimination was fair. *Id.*

Likewise, in the case at hand, Nona Kalfayan may be deprived of her ability to earn income in her profession if she does not stay current on her student loan obligations.  Florida statutes governing health professions and occupations (including optometry) specify that the Florida Department of Health is obligated to obtain information regarding practitioners in default on their student loans – and licenses may be suspended or revoked for failure to repay.  Fla. Stat. §§ 456.0721, 456.072(2), 456.072(1)(k).  Therefore, interference with Nona's student loan payments may result in suspension or revocation of her professional license, and therefore jeopardize her ability to earn income sufficient to support a dividend to other unsecured creditors.

Maintaining payments of $382.24 per month to Nona Kalfayan's student loan lender will benefit the bankruptcy estate.  Under the circumstances of this case, the Debtors have satisfied their burden of showing that the proposed discrimination is fair under § 1322(b)(1) because there is a basis other than nondischargeability for the discrimination and the very creditors who are being discriminated *against* benefit from the arrangement.

Additionally, § 1322(b)(5) explicitly allows maintenance of payments while a Chapter 13 case is pending on an unsecured claim "on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5).  Nona Kalfayan would pay $22,934.40, or 14.6%, on her $157,040.34 student loan obligations during the 60-month period specified in the First Amended Plan.  The last payment on the student loan will be due long after the

plan ends.  The Bankruptcy Code therefore explicitly allows a Chapter 13 plan to provide for such payments.

The Debtors propose to make the student loan payments either directly lender or via the Chapter 13 Trustee.  Section 1326(c) states, "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." 11 U.S.C. § 1326(c).    Therefore, the plan or the order confirming the plan can direct a debtor to make payments directly to student loan lenders.  *See Chandler*, 210 B.R. at 900.  Courts have allowed debtors in similar situations to make payments both via Chapter 13 trustees and directly. *Etheridge*, 297 B.R. at 816 (via the Trustee); *In re Benner*, 156 B.R. 631, 632-35 (Bankr. D. Minn. 1993) (curing arreages via the Trustee and paying the outstanding balance directly); *Chandler*, 210 B.R. at 900 (directly); *In re Cox*, 186 B.R. 744, 746 (Bankr. N.D. Fla. 1995) (directly).  Making student loan payments directly would obviously benefit other unsecured creditors if payments via the Chapter 13 Trustee remained unchanged.  But other unsecured creditors would still benefit even if their payments via the Trustee needed to be reduced to accommodate the student loan payments. This is so because Nona Kalfayan must stay current on her student loans to retain her professional license and the dividend to other unsecured creditors rests upon Nona's license to practice optometry.  Because the Trustee's service is monitoring the timely payment of obligations, the Debtors shall make their payments on account of the student loans via the Chapter 13 Trustee.

### III.  CONCLUSION

Under the circumstances of this case, discriminating in favor of the student loan creditor will benefit other unsecured creditors and thus not constitute unfair discrimination under

§ 1322(b)(1).  Nona Kalfayan shall make her student loan payments via the Chapter 13 Trustee.

The Debtors may not accelerate payments or make any payment other than those necessary to

remain current on the student loans.  It is accordingly **ORDERED** that the Debtors' motion

[DE 16] is **GRANTED** under the terms set forth herein.

###

Copies to:

Perry D. Monioudis, Esq.                                        Office of the US Trustee
800 S.E. Third  Avenue, Suite 300                               51 S.W. 1st Ave.
Ft. Lauderdale, FL 33316                                        Suite 1204
(954) 523-8787                                                  Miami, FL 33130
Email: pmonioudis@bellsouth.net                                 (305) 536-7285

Robin R Weiner
POB 559007
Fort Lauderdale, FL 33355
954-382-2001

Attorney Monioudis is directed to serve a conformed copy of this Order upon all interested
parties not listed above.